*179 PATIENCE DRAKE ROGGENSACK, J.
*180 I. BACKGROUND
¶ 92. Travis was charged with an attempt to have sexual contact with a child under the age of 16, T.M.G., contrary to Wis. Stat. § 948.02(1)(d), which is a Class B felony. On conviction, he faced a sentence of imprisonment not to exceed 30 years. Conviction of that charge, through the provisions of Wis. Stat. § 939.616(2), subjects a defendant to a bifurcated sentence under Wis. Stat. § 973.01, which includes confinement in prison for at least five years.
¶ 93. The criminal complaint set out facts relevant to a showing of probable cause for the crime charged against Travis, who was T.M.G.'s uncle. T.M.G. told the officer that she was sleeping on the floor in her grandmother's living room next to a mattress where Travis was sleeping. She said she woke up around one o'clock in the morning and found her jeans unzipped with the defendant's hand in her pants and that she slapped his hand away before he touched her "private area." She said that sometime later she awoke again to find him rubbing the side of her stomach. She said she then got up and moved away from him to a couch and pretended to be asleep while he went to the bathroom. However, when Travis returned, he came to the couch and picked her up and carried her back to the mattress where he had been during the prior assault. When that happened, she told Travis her head hurt and she went *181 into her grandmother's room. T.M.G. was ten years old at the time of the conduct alleged in the complaint.
¶ 94. During the plea hearing, the circuit court went over some parts of the complaint, pointing out to Travis that there was a potential of 20 years initial confinement and a five year minimum period of confinement. When asked if he understood both of those factors, i.e., the maximum and the minimum, Travis answered "Yes, I understand, Your Honor." During the plea hearing, it was also pointed out that in exchange for his plea, two other pending charges would be dismissed: 08CF643, failing to register as a sex offender, and 08CM2317, obstructing or resisting arrest. Travis acknowledged that he had committed the conduct underlying those two charges that were being dismissed but read-in.
¶ 95. At sentencing, the court reminded Travis once again that the sentence to be imposed must include at least five years confinement. The court asked Travis if he understood that, and again, Travis responded, "Yes, Your Honor." The court then went through some of the details of the attempted sexual assault, pointing out that the child involved was only ten years old at the time. The court, relying on the complaint and the Child Advocacy Center (CAC) interview,[3] said:
When she moved away and went into another room, the defendant brought her back into the living room area where they had both previously been laying and made additional efforts — or made efforts to touch her at that point too. She was able to demonstrate the way he *182 moved his hand down from the top of her shorts to a location halfway between her waistband to her vagina. Later in an interview at the CAC, she did confirm that his hand did, in fact, reach her pubic area.
¶ 96. The court also talked about Travis' prior record, which included at least eight prior convictions and three juvenile adjudications.
¶ 97. The court said that the penalties for Travis' assault of T.M.G. could be more severe, except that the State chose to charge Travis with an attempt, rather than a completed sexual assault of a child, cutting the maximum penalty in half. The court pointed out that Travis had "a couple of batteries" and threats to injure, as well as false imprisonment and second-degree sexual assault convictions.
¶ 98. The court explained that Travis' attempted assault of T.M.G. was a very serious offense and protection of the public was important. The court said that the conviction required significant confinement, otherwise the sentence would depreciate the seriousness of the offense. The court then sentenced Travis to eight years of initial confinement, followed by ten years of extended supervision. The court ordered that the sentence be consecutive to the sentence that he was serving for a 2000 sexual assault conviction. The court also ordered that he have no further contact with T.M.G.
¶ 99. Subsequently, Travis moved the court to conclude that he was sentenced based on inaccurate information because the crime that he was charged with was not that crime described or designated in the complaint, but rather, it was a violation of Wis. Stat. § 948.02(l)(e), which does not include the use or threat of force or violence and has no minimum period of *183 confinement. For the first time at that hearing, the State, with a new district attorney appearing, said there was no allegation of the use or threat of force or violence. The complaint was not reviewed, and the court seemed to proceed based on the assumption of the State and defense counsel.
¶ 100. The court said that if there were an error in the factual allegations in the charge, it did not result in an erroneous sentence because the court would have given the same sentence even if there had not been a mandatory minimum for the crime of conviction. The court explained,
So from the Court's perspective, the existence or nonexistence of a mandatory minimum sentence is of no consequence to this Court in its determination of what was an appropriate sentence [here]. Had that been the case, the Court, I'm sure, would have indicated to the defendant that, "Because of the mandatory minimum and the existence of it and the Court's belief, I am going to give you five years which is the mandatory minimum here because the law requires that," and that certainly wasn't the case.... And I don't think it's reasonable to suppose, nor can this Court support in any way, that the five-year mandatory minimum, which was believed to be in effect, had any bearing whatsoever on the imposition of the eight years of initial confinement... . [T]he sentence would not have changed because of the existence or nonexistence of the mandatory minimum.
¶ 101. The court of appeals reversed. It ordered new sentencing based on a conviction for an attempted violation of Wis. Stat. § 948.02(l)(e), without examining the facts set out in the complaint and without Travis moving to withdraw his plea. The court of appeals did not discuss what conduct may encompass the use or threat of force or violence when a child is the victim and an adult is the perpetrator and whether *184 reasonable inferences from the facts set forth in the complaint satisfied statutory requirements of § 948.02(l)(d). The court of appeals also did not address whether the plea that resulted in Travis' conviction could be vacated without a motion to do so by Travis and a determination that manifest injustice would result if permission to withdraw the plea were not afforded.
II. DISCUSSION
A. Standard of Review
¶ 102. Whether the facts alleged in a criminal complaint are sufficient to show probable cause that the crime stated in the complaint was committed is a question of law for our independent review. State v. Robins, 2002 WI 65, ¶ 20, 253 Wis. 2d 298, 646 N.W.2d 287. Whether an adult who picks up a ten-year-old child who has moved away from the scene of an attempted sexual assault and carries her back to the place of that attempt is encompassed with "use or threat of force or violence" as set out in Wis. Stat. § 948.02(l)(d) is a question of statutory interpretation that requires our independent review; however, we benefit from the prior discussion of the court of appeals and the circuit court. Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶ 14, 309 Wis. 2d 541, 749 N.W.2d 581.
B. Sufficiency of the Complaint
¶ 103. To determine whether a criminal complaint is sufficient, we examine the document to determine "whether there are facts or reasonable inferences [therefrom] set forth that are sufficient to allow a reasonable person to conclude that a crime was prob *185 ably committed and that the defendant probably committed it." State v. Reed, 2005 WI 53, ¶ 12, 280 Wis. 2d 68, 695 N.W.2d 315. The complaint is sufficient if it addressed five questions: "(1) Who is charged?; (2) What is the person charged with?; (3) When and where did the alleged offense take place?; (4) Why is this particular person being charged?; and (5) Who says so? or how reliable is the informant?" Id. (citation and internal quotation marks omitted). The test is one of "minimal adequacy, not in a hypertechnical [evaluation] but in a common sense evaluation." Evanow v. Seraphim, 40 Wis. 2d 223, 226, 161 N.W.2d 369 (1968).
¶ 104. Here, the complaint charges Travis with attempted violation of Wis. Stat. § 948.02(l)(d), sexual contact with a person under 16 years of age, by the use or threat of force or violence. The complaint states that the alleged attempted assaults took place on or about March 24, 2009 in Kenosha, Wisconsin. It alleges that Travis repeatedly attempted to touch T.M.G.'s pubic area. When T.M.G. moved away from Travis, he went to where she had moved and carried her back to the place of the prior attempted sexual assaults and again attempted to touch her pubic area. T.M.G. was Travis' niece and ten years old at the time of the attempted sexual assaults. The complaint was based on law enforcement reports and citizen informants.
¶ 105. At neither the plea hearing nor at sentencing did Travis assert that the complaint was insufficient to support the charge that he attempted to sexually assault T.M.G. by the use or threat of force or violence. However, he now assumes that the facts alleged in the complaint and the reasonable inferences therefrom are not sufficient to support an alleged use or threat of force or violence in the attempted sexual assaults of T.M.G. He does so with no analysis of the complaint. *186 With the exception of a brief comment at oral argument, the State seems to give little thought or push-back to his contention. Accordingly, I construe Wis. Stat. § 948.02(l)(d) to analyze whether there are sufficient factual allegations in the complaint to support this statutory requirement of conviction.
C. Wisconsin Stat. § 948.02(1)(d)
¶ 106. Wisconsin Stat. § 948.02(l)(d) provides: "Whoever has sexual contact with a person who has not attained the age of 16 years by use or threat of force or violence is guilty of a Class B felony if the actor is at least 18 years of age when the sexual contact occurs." What conduct constitutes "use or threat of force or violence" can vary depending on the circumstances under which the sexual assault occurs.
¶ 107. The use or threat of force or violence is to be read in the disjunctive. See State v. Baldwin, 101 Wis. 2d 441, 447-54, 304 N.W.2d 742 (1981). Conduct or words that attempt to compel submission of the victim to the acts of the perpetrator satisfy the standard of the "use or threat of force or violence." See id. at 451. As we said, "any conduct coming within that generalized force concept need not be further particularized." See id.
¶ 108. . What conduct or words may constitute an attempt to compel the victim to submit will vary, depending on the circumstances of the assault. Here, the age of the victim is a factor to be considered. T.M.G. was only ten years old; Travis was 37 years old. The relationship of the perpetrator to the victim is also a factor. Travis was TM.G.'s uncle, whom she regarded as a father figure, i.e., someone in a position of authority over her. The relative physical strength of the perpetrator when compared with that of the victim is also a *187 factor. Here, T.M.G. slapped Travis' hand away and then moved from the place of the attempted sexual assaults. Travis went to T.M.G.'s chosen location, picked her up and physically carried her back to his mattress where he attempted a further assault.[4] His relationship with T.M.G., as an authority figure, and his size when compared with ten-year-old T.M.G., permitted him to overwhelm her choice to move away from him to stop his attempts at sexual assault. In picking her up and carrying her back to his mattress, Travis attempted to compel her submission to his desires. Stated otherwise, picking up a young child involves the use of force by the adult to overwhelm the choice of the child to prevent access to her body by physically distancing her from the abuser.
¶ 109. Accordingly, when all of the above factors are evaluated, the facts alleged in the complaint, and the reasonable inferences therefrom, are sufficient to support probable cause that Travis attempted to compel T.M.G.'s submission, thereby coming within the statutory phrase, "by use or threat of force or violence" of Wis. Stat. § 948.02(l)(d).
D. Plea Withdrawal
¶ 110. There is no provision in the statutes nor logical rationale that supports the conclusion that the circuit court erred by sentencing on incorrect informa *188 tion when the court sentenced the defendant for the crime charged, to which he pled and of which he was convicted. Here, the majority gets around this problem by saying Travis "pled guilty" to attempting to violate Wis. Stat. § 948.02(l)(e).[5] However, the majority opinion's attempt to duck Travis' conviction for attempting to violate § 948.02(l)(d) by saying he pled to a different crime and then not referring to his actual conviction does not change the conviction.
¶ 111. If Travis really believes he attempted to violate only Wis. Stat. § 948.02(1)(e) and therefore he was incorrectly sentenced, he must move to withdraw his plea and have the information charging him with an attempted violation of § 948.02(1)(d) amended.
¶ 112. Travis can withdraw his plea after sentencing only if permitting the judgment to remain would be a manifest injustice. See State v. McCallum, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997). Generally, if a plea is withdrawn, other charges that were dismissed at the plea will be reinstated. See State v. Deilke, 2004 WI 104, ¶ 2, 274 Wis. 2d 595, 682 N.W.2d 945.
¶ 113. Given the burdens that follow an attempt to withdraw a plea after sentencing, one can see why Travis has not moved to withdraw his plea.[6] However, the majority opinion is willing to create new law for Travis, a repeating felon with a record of sexual assaults, and to order the circuit court to sentence him for a crime of which he was not convicted. I do not believe that the law supports the majority opinion's choice.
*189 III. CONCLUSION
¶ 114. I conclude that Travis was lawfully charged with an attempted violation of Wis. Stat. § 948.02(l)(d); pled guilty to attempting to violate § 948.02(l)(d) and was convicted and sentenced for an attempted violation of § 948.02(l)(d), after being properly advised that the statute contained a minimum period of confinement in prison. I also conclude that in order to resentence Travis, he must move to withdraw his plea of attempting to violate § 948.02(l)(d) and prevail on his motion before the circuit court. Resentencing for a crime for which Travis was not charged or convicted does not vacate the crime of conviction. Therefore, I would reverse the decision of the court of appeals and affirm the conviction and sentencing of the circuit court.
¶ 115. Accordingly, I respectfully dissent from the majority opinion.

 The Child Advocacy Center (CAC) interview with T.M.G. is not in the record, but the parties agreed the circuit court could use it. Aside from what is relayed in the circuit court's sentencing, I do not know what information it contains.

 That Travis attempted further sexual contact at that time is found in the discussion of the circuit court. See ¶ 95. It is not noted in the complaint, but must have been in the CAC interview that the court reviewed. However, the CAC interview is not in the record. I have assumed that Travis agrees with the circuit court's statements because if he did not, it was his burden to provide the CAC interview for our review. See Lee v. LIRC, 202 Wis. 2d 558, 560 n.l, 550 N.W.2d 449 (Ct. App. 1996); Wis. Stat. § 809.15(1).

 Majority op., ¶ 26.

 Moving to withdraw his plea subsequent to sentencing will require examination of the complaint as I have done and may result in the reinstatement of two charges that were dismissed due to the plea.